**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**BOWLING GREEN DIVISION**
**CIVIL ACTION NO. 1:21-CV-00068-GNS-HBB**

**BRANDY A.**[1]                                                                                          **PLAINTIFF**

**VS.**

**KILOLO KIJAKAZI, ACTING COMMISSIONER**
**SOCIAL SECURITY ADMINISTRATION**[2]                                    **DEFENDANT**

**FINDINGS OF FACT, CONCLUSIONS OF LAW**
**AND RECOMMENDATION**

BACKGROUND

Before the Court is the complaint (DN 1) of Brandy A. ("Plaintiff") seeking judicial review

of the final decision of the Commissioner pursuant to 42 U.S.C. § 405(g).   Both the Plaintiff (DN

15) and Defendant (DN 20) have filed a Fact and Law Summary.   For the reasons that follow, the

undersigned **RECOMMENDS** that the Court **AFFIRM** the final decision of the Commissioner,

and judgment be **GRANTED** for the Commissioner.

Pursuant to General Order No. 2019-11 and 28 U.S.C. § 636(b)(1)(B), this matter has been

referred to the undersigned United States Magistrate Judge to review the Fact and Law Summaries

and submit Findings of Fact, Conclusions of Law, and Recommendations (DN 12).   By Order

entered August 23, 2021, the parties were notified that oral arguments would not be held unless a

written request therefor was filed and granted (Id.).   No such request was filed.

---

1  Pursuant to General Order 22-05, Plaintiff's name in this matter was shortened to first name and last initial.

2  Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021.   Pursuant to Rule 25(d) of
the Federal Rules of Civil Procedure, Kilolo Kijakazi is substituted as the defendant in this suit.

FINDINGS OF FACT

On June 18, 2018, Plaintiff filed an application for Disability Insurance Benefits and protectively filed an application for Supplemental Security Income (Tr. 42, 279-80, 281-87). Plaintiff alleged that she became disabled on September 21, 2015, as a result of Narcolepsy, cataplexy, insomnia, anxiety, gastritis/GERD, and vision difficulties (Tr. 42, 103-04, 120-21, 139, 157). The claims were denied initially on October 5, 2018, and upon reconsideration on February 4, 2019 (Tr. 42, 102, 119, 136, 154).[3] On March 28, 2019, Plaintiff then filed a written request for a hearing (Tr. 42, 196, 197).

On May 19, 2019, Administrative Law Judge Davida H. Isaacs ("ALJ") conducted a telephonic hearing from Lexington, Kentucky, due to the extraordinary circumstances presented by COVID-19 (Tr. 15, 67-69). Plaintiff and her counsel, M. Gail Wilson, participated in the telephonic hearing (Id.). Ashley H. Johnson, an impartial vocational expert, testified by telephone during the hearing (Id.).

In a decision dated September 29, 2020, the ALJ evaluated this adult disability claim pursuant to the five-step sequential evaluation process promulgated by the Commissioner (Tr. 42-54). The ALJ determined that Plaintiff's met the insured status requirements of the Social Security Act through June 30, 2022 (Tr. 46, Finding No. 1). At step one, the ALJ found Plaintiff has not engaged in substantial gainful activity since February 14, 2017, the date Plaintiff became disabled (Id., Finding No. 2). At step two, the ALJ determined that from February 14, 2017, through November 10, 2019, the period Plaintiff was under a disability, Plaintiff had the following

---

3 While the ALJ's decision indicates the claims were denied initially on October 10, 2018 (Tr. 42), the undersigned has utilized the October 5, 2018, date on the actual Disability Determination and Transmittal documents (Tr. 102, 119).

severe impairments: narcolepsy and cataplexy (Tr. 47, Finding No. 3).   The ALJ also determined that Plaintiff had the following non-severe physical impairments: vision loss, gastritis, and obesity (Id.).   At the third step, the ALJ concluded from February 14, 2017, through November 10, 2019, Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in Appendix 1 (Id., Finding No. 4).

At step four, the ALJ found from February 14, 2017, through November 10, 2019, Plaintiff had the residual functional capacity ("RFC") to perform medium work as defined in 20 C.F.R. §§ 404.1567(c) and 416.967(c), except with the following additional restrictions: she could not climb ladders and scaffolds; she must have avoided exposure to hazardous workplaces such as unprotected heights and large, dangerous machinery; and **she would have likely have been off-task more than 15% of the workday** (Tr. 49, Finding No. 5) (emphasis added).   Additionally, at step four, the ALJ found from February 14, 2017, through November 10, 2019, Plaintiff was unable to perform any past relevant work (Tr. 53, Finding No. 6).

The ALJ proceeded to the fifth step where she considered Plaintiff's residual functional capacity, age, education, and past work experience, as well as testimony from the vocational expert (Tr. 53-54, Finding Nos. 7-10).   The ALJ found from February 14, 2017, through November 10, 2019, there were no jobs that existed in significant numbers in the national economy that Plaintiff could have performed (Tr. 54, Finding No. 10).   Therefore, the ALJ concluded that Plaintiff had been under a "disability," as defined in the Social Security Act, from February 14, 2017, through November 10, 2019 (Id., Finding No. 11).

The ALJ then assessed Plaintiff's condition from November 11, 2019, through the date of the decision pursuant to an eight-step sequential evaluation process promulgated by the

Commissioner (Tr. 54-60).   Notably, the ALJ began with step six, but addressed the rest of the steps in order.   At step six, the ALJ found that Plaintiff's current severe impairments are the same as the severe impairments present from February 14, 2017, through November 10, 2019 (Tr. 54, Finding No. 12).   At step two, the ALJ determined that Plaintiff has not had an impairment or combination of impairments that meets or medically equals the severity of one of the impairments listed in Appendix 1 (Id., Finding No. 13).   In making this assessment, the ALJ specifically addressed the criteria of Listings 12.02, 12.04, and 12.06 (Id.).

At step three, the ALJ found that a medical improvement—pertaining to Plaintiff's concentration, persistence, and maintaining pace—occurred as of November 11, 2019, the date Plaintiff's impairment ended (Tr. 56, Finding No. 14).   At step four, the ALJ determined this medical improvement, beginning November 11, 2019, is related to Plaintiff's ability to work (Tr. 57, Finding No. 15).

At step seven, the ALJ concluded that beginning November 11, 2019, Plaintiff's RFC increased **from** "she would have likely have been off-task more than 15% of the workday" (Tr. 49, Finding No. 5) **to** "[s]he may be off task up to 5% of the workday" (Tr. 57, Finding No. 16).   The ALJ did not otherwise change Plaintiff's RFC (Id.).[4]   Also at step seven, the ALJ determined beginning November 11, 2019, Plaintiff has been capable of performing her past relevant work as a registered nurse (Dictionary of Occupational Titles ("DOT") No. 035.364-010, medium exertional level, and a specific vocational preparation ("SVP") of 7), as well as a nurse practitioner

---

4 The ALJ found beginning November 11, 2019, Plaintiff has had the RFC to perform medium work with the following additional limitations: she cannot climb ladders and scaffolds; she must avoid exposure to hazardous workplaces such as unprotected heights and large, dangerous machinery; and she may be off task up to 5% of the workday (Tr. 57, Finding No. 16).

(DOT No. 079.364-018, light exertional level, and an SVP of 7) as actually and generally performed (Tr. 59, Finding No. 17).

In the alternative, the ALJ proceeded to step eight where she considered Plaintiff's RFC, age, education, and past work experience (Tr. 59-60, Finding No. 17). The ALJ found Plaintiff is capable of performing other unskilled occupations that exist in significant numbers in the national economy (Id., Finding No. 17).[5] Therefore, the ALJ concluded Plaintiff's disability ended November 11, 2019, and Plaintiff has not become disabled again since that date (Tr. 60, Finding No. 18).

Plaintiff timely filed a request for the Appeals Council to review the ALJ's decision (Tr. 271-78). The Appeals Council denied Plaintiff's request for review (Tr. 1-3).

<u>CONCLUSIONS OF LAW</u>

Standard of Review

Review by the Court is limited to determining whether the findings set forth in the final decision of the Commissioner are supported by "substantial evidence," 42 U.S.C. § 405(g); <u>Cotton v. Sullivan</u>, 2 F.3d 692, 695 (6th Cir. 1993); <u>Wyatt v. Sec'y of Health & Human Servs.</u>, 974 F.2d 680, 683 (6th Cir. 1992), and whether the correct legal standards were applied. <u>Landsaw v. Sec'y of Health & Human Servs.</u>, 803 F.2d 211, 213 (6th Cir. 1986). "Substantial evidence exists when a reasonable mind could accept the evidence as adequate to support the challenged conclusion, even if that evidence could support a decision the other way." <u>Cotton</u>, 2 F.3d at 695 (quoting

---

5 The ALJ's decision contains a typographical error indicating "there no jobs that existed in significant numbers in the national economy that the claimant could have performed" (*see* Tr. 59). Finding No. 17 and the analysis in the paragraphs that follow this typographical error clearly indicate the ALJ relied on testimony from the vocational expert to find there are jobs that exist in significant numbers in the national economy that the claimant could perform (Tr. 59-60).

Casey v. Sec'y of Health & Human Servs., 987 F.2d 1230, 1233 (6th Cir. 1993)).   In reviewing a case for substantial evidence, the Court "may not try the case *de novo*, nor resolve conflicts in evidence, nor decide questions of credibility."   Cohen v. Sec'y of Health & Human Servs., 964 F.2d 524, 528 (6th Cir. 1992) (quoting Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984)).

As previously mentioned, the Appeals Council denied Plaintiff's request for review of the ALJ's decision (Tr. 1-3).   At that point, the ALJ's decision became the final decision of the Commissioner.   20 C.F.R. §§ 404.955(b), 404.981, 422.210(a); *see* 42 U.S.C. § 405(h) (finality of the Commissioner's decision).   To the extent Plaintiff suggests that she is appealing the Appeal Council's denial of her request for review, she is mistaken (DN 15 PageID # 691).   Plaintiff is appealing the ALJ's decision because that is the final decision of the Commissioner.   For the above reasons, the Court will be reviewing the ALJ's decision and the evidence that was in the administrative record when the ALJ rendered the decision.   42 U.S.C. § 405(g); 20 C.F.R. § 404.981; Cline v. Comm'r of Soc. Sec., 96 F.3d 146, 148 (6th Cir. 1996); Cotton v. Sullivan, 2 F.3d 692, 695-696 (6th Cir. 1993).

The Commissioner's Sequential Evaluation Process

The Social Security Act authorizes payment of Disability Insurance Benefits and Supplemental Security Income to persons with disabilities.   42 U.S.C. §§ 401 *et seq.* (Title II Disability Insurance Benefits), 1381 *et seq.* (Title XVI Supplemental Security Income).   The term "disability" is defined as an

> [I]nability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months.

6

42 U.S.C. §§ 423(d)(1)(A) (Title II), 1382c(a)(3)(A) (Title XVI); 20 C.F.R. §§ 404.1505(a), 416.905(a); Barnhart v. Walton, 535 U.S. 212, 214 (2002); Abbott v. Sullivan, 905 F.2d 918, 923 (6th Cir. 1990).

The Commissioner has promulgated regulations setting forth a five-step sequential evaluation process for evaluating a disability claim.   See "Evaluation of disability in general," 20 C.F.R. §§ 404.1520, 416.920.   In summary, the evaluation proceeds as follows:

1)   Is the claimant engaged in substantial gainful activity?

2)   Does the claimant have a medically determinable impairment or combination of impairments that satisfies the duration requirement and significantly limits his or her ability to do basic work activities?

3)   Does the claimant have an impairment that meets or medically equals the criteria of a listed impairment within Appendix 1?

4)   Does the claimant have the RFC to return to his or her past relevant work?

5)   Does the claimant's RFC, age, education, and past work experience allow him or her to perform a significant number of jobs in the national economy?

Here, at step five, the ALJ found that Plaintiff was disabled from February 14, 2017, through November 10, 2019.   But the ALJ also utilized the eight-step sequential evaluation process, discussed below, when she concluded that Plaintiff's disability ended November 11, 2019, due a medical improvement—pertaining to Plaintiff's concentration, persistence, and pace—that increased her RFC to where she is able to return to her past relevant work as well as perform a significant number of other jobs that exist in the national economy.   Thus, as to the period November 11, 2019, through the date of the decision, the applications were denied at step seven.

<u>Finding Nos. 4, 9, 12, and 13</u>

It is well-established that "issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived."   <u>United States v. Layne</u>, 192 F.3d 556, 566 (6th Cir.1999) (quoting <u>McPherson v. Kelsey</u>, 125 F.3d 989, 995-96 (6th Cir.1997)); *see also* <u>Brindley v. McCullen</u>, 61 F.3d 507, 509 (6th Cir.1995) (observing that "[w]e consider issues not fully developed and argued to be waived."); <u>Rice v. Comm'r of Soc. Sec.</u>, 169 F. App'x 452, 453 (6th Cir. 2006).   Plaintiff has identified Finding Nos. 4, 9, 12, and 13 along with Finding Nos. 14, 15, 16, 17 and 18 in her Fact and Law Summary (DN 15 PageID # 691).   Plaintiff has set forth the basis of her objection to Finding Nos. 14, 15, 16, 17 and 18, and provided a developed argument in support of her position (<u>Id.</u>, PageID # 691-95).   She has not explained how her objection and supporting argument apply to Finding Nos. 4, 9, 12, and 13 (<u>Id.</u>).   As Plaintiff has merely alluded to her dissatisfaction with Finding Nos. 4, 9, 12, and 13 in a perfunctory manner, unaccompanied by some effort at developed argumentation, Plaintiff's objections to these findings are deemed waived.

<u>Finding Nos. 14, 15, 16, 17, and 18</u>

1.   Arguments of the Parties

Plaintiff disputes the ALJ findings that: (a) a medical improvement occurred as of November 11, 2019 (Tr. 56, Finding No. 14); (2) the medical improvement is related to Plaintiff's ability to work because it increased her RFC (Tr. 57, Finding No. 15); and (3) Plaintiff's RFC increased **from** "she would have likely have been off-task more than 15% of the workday" (Tr. 49, Finding No. 5) **to** "[s]he may be off task up to 5% of the workday" (Tr. 57, Finding No. 16). Plaintiff argues the ALJ erred in failing to properly apply the "medical improvement" standard in

8

reaching a conclusion that "there had been improvement" in Plaintiff's medical condition (DN 15 PageID # 691).   Additionally, Plaintiff—relying on the October 10, 2017, medical source statement prepared by her former treating specialist Dr. Corser (Tr. 430-32) and her subjective complaints about narcolepsy and cataplexy—argues that Finding Nos. 14, 15, and 16 are not supported by substantial evidence and do not comport with 20 C.F.R. §§ 404.1594(b)(3) and 416.994(b)(3) due to the absence of a new medical opinion demonstrating that a medical improvement has actually occurred (Id., PageID # 691-95).   Relatedly, Plaintiff takes issue with Finding Nos. 17 and 18 because they are based on the RFC determination in Finding No. 16 (Id.).

Defendant contends the ALJ identified substantial evidence supporting her findings and explained why she concluded Plaintiff was disabled from February 14, 2017, through November 10, 2019, and why the evidence supported a finding that Plaintiff's disability ended after that date due to medical improvement (DN 20 PageID # 709-10, 712-21) (citing Tr. 49-59).   Defendant points out, the ALJ extensively explained that after Plaintiff switched from Dr. Corser to Dr. Turpen, the treatment for her sleep problems was far more successful in addressing her deficits in concentration, persistence, and pace, thereby reducing the time she would be off task (Id. at PageID # 710) (citing Tr. 57-58).   As the Appeals Council considered the records submitted post-hearing and denied Plaintiff's request for review, the Court cannot consider those records in assessing whether the ALJ's decision is supported by substantial evidence (Id.).

2.   Applicable Law

There are several factors that the Agency will consider in deciding whether a claimant's disability continues.   20 C.F.R. §§ 404.1594(a), 416.994(a).   First, the Agency must determine if there has been any medical improvement in the claimant's impairment or impairments and, if so,

whether this medical improvement is related to the claimant's ability to work.   Id.   Where medical improvement related to the claimant's ability to work has occurred, the Agency "must show" that the claimant is "currently able to engage in substantial gainful activity before" the Agency can find the claimant is no longer disabled.   Id.

The term "medical improvement" means "any decrease in the medical severity of" the claimant's impairment or impairments that was or were present at the time of the most recent favorable medical decision that the claimant is disabled or continued to be disabled.   20 C.F.R. §§ 404.1594(b)(1), 416.994(b)(1).   "A determination that there has been a decrease in medical severity must be based on improvement in the symptoms, signs, and/or laboratory findings associated with [the claimant's] impairment(s)."   Id.

Medical improvement not related to a claimant's ability to work involves a decrease in the severity of the impairment or impairments present at the time of the most recent favorable medical decision, but no increase in the claimant's functional capacity to do basic work activities.[6] 20 C.F.R. §§ 404.1594(b)(2), 416.994(b)(2).   By contrast, medical improvement is related to a claimant's ability to work if there has been a decrease in the severity of the impairment or impairments present at the time of the most recent favorable medical decision and an increase in the claimant's functional capacity to do basic work activities.   20 C.F.R. §§ 404.1594(b)(3), 416.994(b)(3).[7]   In assessing whether medical improvement is related to a claimant's ability to do

---

6 "Basic work activities means the abilities and aptitudes necessary to do most jobs.   Included are exertional abilities such as walking, standing, pushing, pulling, reaching and carrying, and nonexertional abilities and aptitudes such as seeing, hearing, speaking, remembering, using judgment, dealing with changes and dealing with both supervisors and fellow workers."   20 C.F.R. §§ 404.1594(b)(4), 416.994(b)(4).

7 When new evidence showing a change in signs, symptoms or laboratory findings establishes that a medical improvement has occurred and that the claimant's functional capacity to perform basic work activities, or RFC, has increased, then the medical improvement which is related to the claimant's ability to do work has occurred.   20 C.F.R. §§ 404.1594(b)(4)(i), 416.994(b)(4)(i).   An RFC is also used to determine whether the claimant can engage in

work, the Agency will assess the claimant's RFC based on the current severity of the impairment or impairments present at the claimant's last favorable medical decision.   20 C.F.R. §§ 404.1594(c)(2), 416.994(c)(2).   The claimant's new RFC will then be compared to the claimant's RFC at the time of the Agency's most recent favorable medical decision[8] to determine if the claimant's functional capacity for basic work activities has increased.   20 C.F.R. §§ 404.1594(c)(2) and (c)(3)(ii), 416.994(c)(2) and (c)(3)(ii).   "Unless an increase in the current [RFC] is based on changes in the signs, symptoms, or laboratory findings, any medical improvement that has occurred will not be considered related to [the claimant's] ability to do work."   20 C.F.R. §§ 404.1594(c)(2), 416.994(c)(2).

The Commissioner has promulgated regulations setting forth an eight-step sequential evaluation process for determining whether a claimant's disability continues or ends.   20 C.F.R. §§ 404.1594(f), 416.994(f).   In summary, the evaluation proceeds as follows:

1)   Is the claimant engaged in substantial gainful activity?   If yes, the claimant's disability has ended.   If no, go to step 2.

2)   Does the claimant have an impairment or combination of impairments that meets or medically equals the criteria of a listed impairment within Appendix 1?   If yes, the claimant is disabled.   If no, go to step 3.

3)   Has there been medical improvement?   If yes, go to step 4. If no, go to step 5.

4)   If there has been a medical improvement, is it related to the claimant's ability to do work?   If no, go to step 5.   If yes, go to step 6.

---

substantial gainful activity and, thus, whether the claimant continues to be disabled.   Id.

8 "The most recent favorable medical decision is the latest decision involving a consideration of the medical evidence and the issue of whether you were disabled or continued to be disabled which became final."   20 C.F.R. §§ 404.1594(b)(7), 416.994(b)(7).

11

5)      If there is no medical improvement, or the medical improvement is not related to the claimant's ability to do work, consider whether the exceptions in §§ 404.1594(d) and (e) or 416.994(d) and (e) apply.  If none apply, the claimant's disability continues.  If one of the exceptions from the first group applies go to step 6.  If one of the exceptions from the second group applies, the claimant's disability has ended.

6)      If medical improvement is related to the claimant's ability to work or if one of the first group of exceptions to medical improvement applies, an assessment of whether the current impairment or impairments is/are "severe" must be conducted.  If the current impairments are non-severe the disability has ended.

7)      If the current impairments are severe, then an assessment of the claimant's RFC must be conducted based on all current impairments.  The claimant's RFC will then be used to determine whether the claimant can still do his or her past relevant work.  If yes, the claimant's disability has ended. If no, go to step 8.

8)      Does the claimant's RFC, age, education, and past work experience allow him or her to perform a significant number of jobs in the national economy?  If yes, the claimant's disability has ended.  If no, the claimant's disability continues.

Id.  Plaintiff's challenges concern steps three through eight.

As Plaintiff filed her application after March 27, 2017, the new regulations for evaluating medical opinions apply to her case.  *See* 20 C.F.R. §§ 404.1520c, 416.920c.  The new regulations explicitly indicate "[w]e will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s),"[9] in the

_____

9 At the initial and reconsideration levels State agency medical and psychological consultants review the evidence in the case record and make "administrative medical findings."  20 C.F.R. §§ 404.1513a(a)(1), 416.913a(a)(1). Administrative law judges "must consider" the administrative medical findings of non-examining state agency medical or psychological consultants according to the new regulation.  20 C.F.R. §§ 404.1513a(b)(1), 416.913a(b)(1).

record, even if it comes from a treating medical source.   20 C.F.R. §§ 404.1520c(a), 416.920c(a).[10]   Instead, Administrative Law Judges will now evaluate the "persuasiveness" of medical opinions and prior administrative medical findings by utilizing the five factors listed in paragraphs (c)(1) through (c)(5) of the regulation.   20 C.F.R. §§ 404.1520c(a) and (b), 416.920c(a) and (b).   The five factors are supportability, consistency, relationship with the claimant, specialization, and other factors.   20 C.F.R. §§ 404.1520c(c)(1)-(5), 416.920c(c)(1)-(5).[11]   Of these five factors, the two most important are supportability and consistency.   20 C.F.R. §§ 404.1520c(a) and (b)(2), 416.920c(a) and (b)(2).   Further, the regulation requires Administrative Law Judges to explain how they considered the supportability and consistency factors in determining the persuasiveness of the medical source's opinion.   20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).   Notably, under the regulations, Administrative Law Judges "may, but are not required to, explain how" they considered the three other factors in determining the persuasiveness of the medical source's opinion.   Id.

   3.   Discussion

   The undersigned will begin with Plaintiff contention that records submitted post-hearing show she continued to be sleepy and fatigued (DN 15 PageID # 695) (citing Tr. 23).   Apparently, Plaintiff believes since the Appeals Council considered this new evidence but declined her request for review (Tr. 1-3), it is part of the record that the Court must consider in determining whether the final decision of the Commissioner is supported by substantial evidence (Id. at PageID # 695).

---

10 The language quoted above indicates that the new regulation has done away with the controlling weight rule in 20 C.F.R. §§ 404.1527(c)(2) and 416.927(c)(2).

11 In assessing the relationship with the client, consideration should be given to the following: length of the treatment relationship, frequency of examinations, purpose of the treatment relationship, extent of the treatment relationship, and examining relationship.   20 C.F.R. §§ 404.1520c(c)(3)(i)-(v), 416.920c(c)(3)(i)-(v).

Plaintiff's belief is, however, contra to well-established case law in the Sixth Circuit. When the Appeals Council considers new evidence, but declines review, the district court cannot consider the new evidence in deciding whether to uphold, modify, or reverse the final decision of the Commissioner. Cline v. Comm'r of Soc. Sec., 96 F.3d 146, 148 (6th Cir. 1996); Cotton v. Sullivan, 2 F.3d 692, 695-696 (6th Cir. 1993). For this reason, the undersigned will not consider the new evidence which is treatment records—dated May 12, June 23, September 15, and December 8, 2020, and February 9, 2021—addressing Plaintiff's narcolepsy and cataplexy (Tr. 8-32) in determining whether the Court should uphold, modify, or reverse the final decision of the Commissioner.

Plaintiff's treating specialist Bruce C. Corser, M.D., prepared a medical source statement, dated October 10, 2017, in which he reported that the claimant had various restrictions due to narcolepsy and cataplexy (Tr. 430-32). Included within the restrictions were "serious limitations" on performing workplace activities on a sustained basis, such as maintain attention for two-hour segments and performing at a consistent pace (Tr. 432). The ALJ found Dr. Corser's determinations "generally persuasive for the period from February 14, 2017 through November 10, 2019" (Tr. 52). The ALJ explained that the determinations were supported by the doctor's own treatment of Plaintiff during that time frame and consistent with Plaintiff's documented claims of excessive sleepiness during that time frame (Id.). Thus, the ALJ relied on Dr. Corser's medical opinion, along with other evidence in the record, in finding that during the period February 14, 2017, through November 10, 2019, Plaintiff's RFC included the limitation "[s]he would likely have been off-task more than 15% of the workday" (Tr. 49, 50-53, Finding No. 5).

The ALJ recognized a change in the evidence concerning Plaintiff's narcolepsy and cataplexy beginning November 11, 2019 (Tr. 54).  As Plaintiff had not been involved in substantial gainful activity, the ALJ proceeded with the eight-step sequential evaluation process for determining whether Plaintiff's disability continued or ended.

At step two, in the context of assessing whether Plaintiff's mental impairments met or medically equaled the criteria of Listings 12.02, 12.04, and 12.06, the ALJ observed that as to concentration, persistence, and maintaining pace, Plaintiff did not exhibit "any signs of inattention during the hearing" (Tr. 54-55, Finding No. 13).   Additionally, the ALJ noted that the October 11, 2019, treatment note prepared by Dr. Turpen, the specialist who took over from Dr. Corser, indicated Plaintiff was staying off Xyrem and she denied any cataplexy (Tr. 55, 623).   Further, the ALJ acknowledged that both the October 21 and November 11, 2019, treatment notes prepared by Dr. Turpen indicated that Plaintiff appeared "very alert" (Tr. 55, 620, 626).   As Plaintiff did not meet or medically equal the criteria of a listed impairment, the ALJ proceeded to the next step.

At step three, in the context of concluding that a medical improvement occurred as of November 11, 2019, the ALJ indicated her determination was supported by evidence discussed in detail in Finding Nos. 4, 5, 13, 15, and 16 (Tr. 56, Finding No. 14).   As to concentration persistence, and maintaining pace, the ALJ again mentioned Plaintiff not exhibiting any signs of inattention during the hearing and the information set forth above from Dr. Turpen's treatment notes dated October 11, October 21, and November 11, 2019 (Tr. 56).   The ALJ further commented:

> On November 11, 2019, the claimant reported that she was pleased with a change in her medication, including lowering her stimulant dosage.  She noted that she was getting to bet [sic] around 10pm, falling asleep quickly, and waking up between 6-8am.  She noted

15

her sleep quality was improved with Ambien and that she had not been napping recently until she ran out of her Sunosi medication. An examination revealed the claimant appeared alert and oriented. She was described as pleasant with appropriate affect.  (Exhibit 12F, pgs. 2, 5, 11).   At that point, the record ended.

In light of this improvement, there is no evidence thereafter to demonstrate that the claimant's narcolepsy and sleep-impairments continued to cause more than a moderate level of symptoms after the closed period.   Indeed, notably, the claimant submitted no further medical treatment records at all.

(Id.).   The ALJ's step three findings are supported by substantial evidence in the record and comport with applicable law because they are based on improvement in the symptoms and signs. *See* 20 C.F.R. §§ 404.1594(b)(1), 416.994(b)(1).

The ALJ acknowledged that the only additional evidence in the record was a June 3, 2020, statement from Plaintiff's former specialist, Dr. Corser (Id.) (citing Tr. 632).   The statement indicates that Plaintiff's sleep issues and limitations are the same as they were when Dr. Corser rendered his opinion on October 10, 2017 (Tr. 632).   The ALJ found this statement "not persuasive" because a significant period had passed since Dr. Corser last treated Plaintiff in 2018 (Tr. 57).   Additionally, the ALJ explained that Dr. Corser's statement was inconsistent with Plaintiff's documented improvement with treatment from Dr. Turpen, the specialist Plaintiff began seeing in early 2019 (Tr. 57).   The ALJ indicated in the findings that follow she would discuss in more detail the treatment Plaintiff received from Dr. Turpen (Id.).   The ALJ's findings concerning the persuasiveness of Dr. Corser's statement are supported by substantial evidence and comport with applicable law that requires the ALJ to consider the supportability and consistency factors in determining the persuasiveness of the opinion.   *See* 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).

16

At step four, the ALJ appropriately compared Plaintiff's RFC for the period during which Plaintiff was disabled with Plaintiff's RFC beginning November 11, 2019, to determine the medical improvement was related to Plaintiff's ability to work because with only a moderate limitation in concentration, persistence, and pace, there has been an increase in Plaintiff's RFC (Id., Finding No. 15).   For the reasons provided by the ALJ, which are discussed above and below, substantial evidence supports this finding.   Further, the ALJ's finding comports with applicable law because the RFC beginning November 11, 2019, is based on changes in the signs and symptoms identified by the ALJ.   *See* 20 C.F.R. §§ 404.1594(c)(2), 416.994(c)(2).   Notably, 20 C.F.R. §§ 404.1594(b)(3) and 416.994(b)(3), as well as the two illustrative examples that follow, do not substantiate Plaintiff's claim that for the above finding to be supported by substantial evidence and comport with applicable law there must be a new medical opinion indicating she has experienced a medical improvement related to her ability to work.

Having found Plaintiff's impairments beginning November 11, 2019, are severe (Tr. 54, Finding No. 12), the ALJ proceeded to step seven.   The ALJ found that Plaintiff's RFC improved to the extent "[s]he may be off-task up to 5% of the workday" (Tr. 57, Finding 16).   In support of this determination the ALJ explained:

> In sum: After ten years with Dr. Corser as her sleep doctor, around April 30, 2019 the claimant switched to a different provider – TJ Health and, specifically, Dr. Turpen – to address her symptoms, and the records indicate that this provider (after some trial-and-error) has been far more successful in addressing the symptoms of her impairment than Dr. Corser had been in recent years.   (See Ex. 9F, pg. 1, and the rest of Ex. 9F).
>
> On May 7, 2019, she met with Klark Turpen, M.D.   Dr. Turpen questioned the diagnosis of narcolepsy, given that the claimant had reported going days without sleeping if not taking a variety of medications inducing sleep.   He modified her medications,

although he agreed to permit the claimant to finish up her 6-month prescription of Xyrem.   (Ex. 9F, pgs. 12-13).   On June 4, 2019, the claimant reported that she [was] currently getting in bed 11 pm to midnight, and – even though not working – denied napping.[12] (Ex, 9F, pg, 16). On September 9, 2019, Dr. Turpen modified her medications, removing Xyrem.

At the October 21, 2019 visit, the record reflected that off Xyrem she feels "more social".   Moreover at that October 21, 2019, she reported that she was falling asleep quickly, and sleeping more soundly.   She stated that she was awakening briefly 1-2 nights a week but had no difficulty restarting her sleep.   (Ex. 12F, pg. 8). Dr. Turpen tweaked her medication again with a trial of Sunosi. (Ex. 11, 2019).

On November 11, 2019, the claimant reported that she was pleased with a change in her medication, including lowering her stimulant dosage.   She noted that she was getting to bet around 10pm, falling asleep quickly, and waking up between 6-8am.   She noted her sleep quality was improved with Ambien and that she had not been napping recently until she ran out of her Sunosi medication.   An examination revealed the claimant appeared alert and oriented.   She was described as pleasant with appropriate affect.   (Exhibit 12F, pgs. 2, 5, 11).   At that point, the record ended.

In light of this improvement, there is no evidence thereafter to demonstrate that the claimant's narcolepsy and sleep-impairments continued to cause more than the [sic] a moderate level of symptoms as during the closed period.   Indeed, notably, the claimant submitted no further medical treatment records at all.

The only additional record is a June 3, 2020 statement from her former doctor, Dr. Corser, not her current sleep doctor Dr. Turpen (Exhibit 14F).   On June 3, 2020 Dr. Corser reiterated that he supported his earlier medical source statement.   (Exhibit 14F). However, as discussed above, in early 2019 the claimant switched treatment providers.   There are no further records from Dr. Corser after 2018.   Accordingly, by June 3, 2020 Dr. Corser was no longer the claimant's treating physician.   Moreover, his statements are not supported by the claimant's documented improvement with

---

12 The ALJ noted, "She had reported brief memory loss when stopping Lexapro (Ex. 9F, pg. 6), but there were no further complaints once she returned to it" (Tr. 58 n.3).

18

> treatment as addressed in more detail in the portion of this decision dedicated to the period beginning November 11, 2019, and is thus not persuasive.
>
> Moreover, for the reasons outlined above, Dr. Corser earlier determination (Ex. 11F) is not persuasive for the period beginning November 11, 2019.   Likewise, due to his absence of treatment of the claimant for a significant period of time prior to November 11, 2019, Dr. Corser's June 2020 assessment (Ex. 14F) is likewise unpersusasive [sic].
>
> Otherwise, I incorporate into the findings for the period beginning November 11, 2019 the remainder of the discussion, analysis and findings from the prior period to reach similar conclusions as to the lack of persuasiveness of the assessments by the consultative examiner and DDS, and to explain the other aspects of the claimant's residual functional capacity below for this period.
>
> After considering the evidence, I find that the claimant's medically determinable impairments could reasonably be expected to produce some of the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence.

(Tr. 57-59).   The above findings are supported by substantial evidence in the record and comport with the applicable law for assessing Plaintiff's RFC and determining the persuasiveness of Dr. Corser's June 3, 2020, opinion.   *See* 20 C.F.R. §§ 404.1520c(b)(2), 404.1529, 404.1545(a)(3), 404.1546(c), 416.920c(b)(2), 416.929, 416.945(a)(3), 416.946(c).

Additionally, at step seven, the ALJ relied on the vocational expert's testimony to determine that with Plaintiff's RFC beginning November 11, 2019, she has been capable of performing her past relevant work as a registered nurse (DOT No. 035.364-010, medium exertional level, and SVP of 7), as well as a nurse practitioner (DOT No. 079.364-018, light exertional level, and an SVP of 7) as actually and generally performed (Tr. 59, Finding No. 17).   This finding is supported by substantial evidence in the record and comports with applicable law.

19

Alternatively, at step eight, beginning November 11, 2019, the ALJ considered Plaintiff's age, education, work experience, RFC, and the vocational expert's testimony (Id.).   The ALJ found that there are other unskilled occupations with a significant number of jobs in the national economy that Plaintiff could perform (Id.).   This finding is also supported by substantial evidence in the record and comports with applicable law.   In sum, Plaintiff is not entitled to relief based on her challenges to Finding Nos. 14, 15, 16, 17, and 18.

<u>Conclusion</u>

As the undersigned noted previously, "[a]s long as substantial evidence supports the Commissioner's decision, we must defer to it, even if there is substantial evidence in the record that would have supported an opposite conclusion."   Warner v. Comm'r of Soc. Sec., 375 F.3d 387, 390 (6th Cir. 2004).   Regardless of how the undersigned may view the evidence, it is not this Court's place to re-try or re-evaluate the findings of the ALJ.   42 U.S.C. § 405(g).   Rather, the undersigned is only to find if substantial evidence exists to support the ALJ's decision and if the ALJ followed the applicable law.   (Id.).   After reviewing the record, the undersigned concludes that the ALJ's determination is supported by substantial evidence in the record and correctly followed the applicable law.   Therefore, Plaintiff is not entitled to relief with regard to her challenge.

RECOMMENDATION

For the foregoing reasons, the undersigned concludes that the Commissioner's findings are supported by substantial evidence and comport with applicable law. As such, the undersigned **RECOMMENDS** that the Court **AFFIRM** the final decision of the Commissioner, and judgment be granted for the Commissioner.

July 28, 2022

H. Brent Brennenstuhl
**United States Magistrate Judge**

NOTICE

Therefore, under the provisions of 28 U.S.C. §§ 636(b)(1)(B) and (C) and Fed.R.Civ.P. 72(b), the Magistrate Judge files these findings and recommendations with the Court and a copy shall forthwith be electronically transmitted or mailed to all parties. Within fourteen (14) days after being served with a copy, any party may serve and file written objections to such findings and recommendations as provided by the Court. If a party has objections, such objections must be timely filed, or further appeal is waived. Thomas v. Arn, 728 F.2d 813 (6th Cir.), aff'd, 474 U.S. 140 (1984).

July 28, 2022

H. Brent Brennenstuhl
**United States Magistrate Judge**

Copies:          Counsel

21